IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Gwendolyn Hightower, ) | Civil Action No.: 1:12-cv-02728-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Shiva V. Hodges.[1] Plaintiff Gwendolyn Hightower brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). In her R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits on July 14, 2008, alleging that she became unable to work on January 1, 2008. The application was denied initially and on reconsideration. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). That hearing was held on January 3, 2011, and Plaintiff appeared and testified. A vocational expert also testified. The ALJ issued a decision dated March 24, 2011, finding that Plaintiff was not disabled. The ALJ's overall findings were as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: history of bilateral breast cancer, borderline intellectual functioning, major depressive disorder, asthma, and osteoarthritis (20 CFR 404.1520(c)).

. . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

. . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) in that she can lift and carry up to ten pounds occasionally and lighter objects frequently; stand and walk for no more than two hours in a workday; and sit throughout the workday. She can occasionally stoop, twist, balance, crouch, kneel, and climb stairs or ramps, but never crawl or climb ladders or scaffolds. She can only perform work not involving concentrated exposure to extremes of temperature. By reason of her mental impairments, she is further restricted to simple, routine, repetitive tasks not requiring ongoing interaction with the general public.

. . .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

7. The claimant was born on August 19, 1970 and was 37 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563). She is now 40 years old.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

      9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

      10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

      11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

Tr. 18–28.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. On September 21, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 19, 21, 22, and the Magistrate Judge issued her Report and Recommendation ("R&R") on December 11, 2013, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 24. Plaintiff filed timely objections to the R&R on January 28, 2014, Pl.'s Objs., ECF No. 28, and Defendant replied on February 6, 2014, Def.'s Reply, ECF No. 29.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the

4

absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant

numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends affirming the decision of the Commissioner. Specifically, the Magistrate Judge reports that the ALJ's finding that (1) Plaintiff did not meet Listing 12.05C for an intellectual disability[2] was supported by substantial evidence and without legal error and (2) that the ALJ's decision to discount the medical opinions of Dr. John Bradley was supported by substantial evidence and without legal error. Plaintiff objects to each of the Magistrate Judge's recommendations, and the Court addresses Plaintiff's objections in turn.

### I.     The Analysis Under Listing 12.05C

Plaintiff contends that the Magistrate Judge's recommendation is erroneous because the ALJ disregarded what Plaintiff argues were uncontradicted IQ test scores. Moreover, Plaintiff claims that the basis for the ALJ's finding that Plaintiff's IQ scores were invalid was improper because the

---

[2] The Social Security Administration substituted the term "intellectual disability" for the term "mental retardation" in an August 1, 2013 amendment to the regulations. 78 Fed. Reg. 46,499, 46,501 (Aug. 1, 2013). As it did not affect the regulation substantively, the Court will use the new term.

6

ALJ based the decision on Plaintiff's adaptive functioning, which is a separate and distinct prong of the analysis under Listing 12.05C.[3]  In response to the objections, the Commissioner contends that the ALJ's assessment of Plaintiff's mental impairments under Listing 12.05C was without error and supported by substantial evidence.  Specifically, the Commissioner points out that, despite the determination of the validity of Plaintiff's IQ scores, substantial evidence supports the ALJ's finding "that Plaintiff did not suffer from adaptive functioning deficits as required by 12.05C." Def.'s Reply 2.

After reviewing the record *de novo* in light of Plaintiff's objections, the Court finds the Magistrate Judge's recommendation to be proper.  Plaintiff's objections focus on the ALJ's finding that Plaintiff's IQ scores "do not demonstrate mental retardation." Tr. 19.  However, the ALJ did not merely discount Plaintiff's IQ scores.  As the Magistrate Judge notes, the ALJ also concluded that Plaintiff did not suffer from the necessary adaptive functioning deficits, which, as even Plaintiff points out in her objections, is a separate prong of the analysis.  Indeed, the Magistrate Judge, in her R&R, cites the Fourth Circuit's recent opinion in *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012), which reviewed an ALJ's similar analysis under Listing 12.05C.  In *Hancock*, the court broke

---

[3] Listing 12.05 provides as follows, in pertinent part:

> [I]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

Listing 12.05C down into three prongs and noted that a claimant "can prevail only if she establishes that the ALJ erred in his analysis of" *each* prong of Listing 12.05C. *Id.* at 475.

Plaintiff does not object to the Magistrate Judge's report that the ALJ's finding regarding Plaintiff's adaptive functioning was proper. Indeed, Plaintiff even points out in her objections that "[t]he ALJ may conduct an appropriate inquiry into Plaintiff's activities in considering Plaintiff's adaptive functioning." Pl.'s Objs. 3. Here, as the Magistrate Judge notes, the ALJ did just that, performing a review of Plaintiff's work history, regular activities, living and social situation, educational history, and medical information, and ultimately found that Plaintiff "does not reveal significant deficits in [two or more of the] skill areas described in the [*Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (Revised)*]." R&R 16. Accordingly, the Court finds that the ALJ's decision regarding Plaintiff's adaptive functioning was proper in light of the substantial evidence in the record. *See Hancock*, 677 F.3d at 475–76.[4] Therefore, the Magistrate Judge's recommendation was proper.

---

[4] To the extent that the ALJ's analysis under "Prong 2" of Listing 12.05C was erroneous, that error was harmless in light of *Hancock*'s requirement that Plaintiff must show that the ALJ erred as to *all* prongs. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the Commissioner "would have reached the same result notwithstanding his initial error"); *Morgan v. Barnhart*, 142 F. App'x 716, 724 (4th Cir. 2005). This Court's mention of error, however, should not be read as a finding of error, as the Court is not convinced that any error was committed by the ALJ. Indeed, *Hancock* shows that an ALJ may reject a claimant's IQ scores so long as substantial evidence is considered and supportive of the decision. 667 F.3d at 475. Here, the ALJ found that "[o]ther evidence of record . . . supports a determination that [the IQ scores] do not demonstrate mental retardation in the claimant." Tr. 19. Intertwined with that decision is the ALJ's decision to discount the opinions of Dr. John Bradley, who performed the IQ test but was not Plaintiff's treating physician. Because the Court, below, finds that the ALJ's decision to assign "little weight" to the opinions of Dr. Bradley is without error, the Court finds the factual findings of the ALJ nearly indistinguishable from the relevant findings in *Hancock*, where the ALJ discredited the IQ scores "on certain failures of the test examiner," as well as "the results' inconsistency with both the claimant's actual functioning and with the notes of treating psychiatrists." 466 F.3d at 474–75. *Hancock*, thus, convinces this Court that the ALJ's analysis was proper.

**II.     The Weighing of Dr. John Bradley's Medical Opinions**

Plaintiff also objects to the Magistrate Judge's recommendation to affirm the decision of the ALJ to discount the medical opinions of Dr. Bradley, who performed two consultative psychological examinations of Plaintiff.  Specifically, Plaintiff argues that "the ALJ has failed to properly explain the little weight assigned to the opinion of a specialist who consistently came to the same conclusions regarding Hightower's diagnoses and functional limitations." Pl.'s Objs. 7.  In response, the Commissioner argues that the ALJ's decision to discount Dr. Bradley's opinions (specifically, his opinion about whether Plaintiff met Listing 12.05C) was supported by substantial evidence and "a number of compelling reasons." Def.'s Reply 3–4.

Again, the Court must review the ALJ's decision *de novo*—in light of the Magistrate Judge's recommendation and Plaintiff's objections.  Unless the Commissioner finds that a medical opinion is both an opinion of a treating source and entitled to controlling weight, the Commissioner must consider the following non-exclusive list of factors to determine the weight to be afforded a medical source opinion: (1) whether an examining relationship exists; (2) whether the evidence with which the physician supports his opinion; (3) whether the opinion is consistent; (4) whether the physician is a specialist in the area in which he is rendering an opinion; and (5) other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c).  Here, there is no dispute that Dr. Bradley was an examining source, and Plaintiff does not contend that Dr. Bradley's opinion is *entitled* to controlling weight.

Plaintiff argues instead that the ALJ failed to *explain* properly his decision to give Dr. Bradley's medical source opinions "little weight."  In the administrative decision, however, the ALJ (1) noted that Dr. Bradley was not a treating physician, (2) explained that "the findings of his mental status examination in the [2009] report are essentially identical to those in the [2008]

9

report," and (3) incorporated the analysis of the evidence under Listing 12.05.[5] Tr. 25–26. Particularly, the ALJ found that Dr. Bradley's responses in the Psychiatric Review Technique Form, accompanying the 2009 report, are not supported by Dr. Bradley's clinical findings in either of the reports or any other clinical findings in Plaintiff's medical records. *See* Tr. 691–708. The Magistrate Judge notes this reasoning of the ALJ in the R&R. R&R 21. Accordingly, the Court finds the Magistrate Judge recommendation to be proper, and Plaintiff's objections are overruled.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law. For the reasons set forth above and by the Magistrate Judge, the Court hereby overrules Plaintiff's objections and adopts and incorporates by reference the R&R of the Magistrate Judge. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

March 11, 2014
Florence, South Carolina

---

[5] As explained by the ALJ, Dr. Bradley's 2009 report indicated that Plaintiff's mental impairments were more severe, and it was accompanied by the Psychiatric Review Technique Form, which provided a picture of a more-restrictive mental functional capacity. The ALJ, however, found that the "primary difference in the [2009] evaluation is that Dr. Bradley conducted psychological testing of [Plaintiff] at the request of her representative." Tr. 24. Indeed, it was in 2009 that Dr. Bradley administered the IQ test, and his analysis of the Plaintiff's IQ test scores was the most prominent difference between the two evaluations. Tr. 410–13, 686–708. The validity of those IQ scores was ultimately discounted by the ALJ because of inconsistent substantial evidence in the record and Plaintiff's "language, presence, and comprehension" at the hearing before the ALJ. Tr. 19.